IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANTOS ALBERT | CIVIL DIVISION |
| Plaintiff, | Civil Action No. 2:21-cv-1625 |
| ALLEGHENY HEALTH NETWORK; DAINE ALLEN | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, Santos Albert, by and through his undersigned counsel, The Lacy Employment Law Firm LLC, hereby files this Complaint against Defendants and states as follows:

**INTRODUCTION**

The facts alleged in Plaintiff's Complaint are reminiscent of times past. Unfortunately, some of these attitudes that pervaded the United States have yet to be fully eradicated. Mr. Albert, for years, was forced to endure racial discrimination at the hands of his supervisor, Diane Allen.

The remarks that Ms. Allen made over the years are not garden-variety microaggressions. Rather, they are the type of remarks where the only plausible inference available is that she held racist beliefs. Comments like, "keep your monkeys in line, there are black people and n*ggers, and calling a Middle Eastern man a "sand n*gger" are abhorrent.

Upon information and belief, these remarks led to Ms. Allen's termination. The problem, however, is that Mr. Albert himself had to lead the charge. He first complained in March 2019 about Ms. Allen's behavior, which had persisted for some time up until that point. Luckily,

another white supervisor, John Guthrie, came to his aid and did the same. It was not until Mr. Albert made another complaint, in May 2019, that AHN finally brought in an investigator to, upon information and belief, find that Ms. Allen's behavior warranted dismissal. Mr. Albert was forced to work under the very same woman – for two months – who created the most hostile of work environments. The pertinent question, however, is why AHN allowed Ms. Allen to discriminate against black employees for years when she openly made these comments in front of numerous people during his tenure at AHN?

After finding the courage to mount this stand against workplace racism, both Mr. Guthrie and Mr. Albert now find themselves unemployed. Mr. Albert's ceiling was not made of glass during his time at AHN, it was made of concrete.

## PROCEDURAL AND ADMINISTRATIVE REMEDIES

1. All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

2. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

3. On or about August 14, 2020, Plaintiff dual-filed a charge with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging racial discrimination and retaliation.[1] *See* EEOC Charge of Discrimination, attached as Exhibit 1.

---

[1] Plaintiff's claims under the PHRA and PFPO are referenced for notice purposes. Plaintiff is required to wait one full year from the time of filing the dual-filed charge to bring claims under the PHRA and PFPO. Plaintiff must however file his lawsuit in advance of the same because of the date of issuance of his federal right-to-sue letter.

4. The EEOC issued a Right to Sue letter ("Right to Sue") and Plaintiff timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue that the EEOC issued. *Id.*

5. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

6. Plaintiff Santos Albert is a black man that was previously employed by Allegheny Health Network. He resides at 103 North Meadowcroft Ave Pittsburgh Pa 15216.

7. Defendant Allegheny Health Network ("AHN" or "AHN"), upon information and belief, is located at 20 5th Avenue Suite 2900 Pittsburgh, PA 15222, and Mr. Albert worked at 4 Allegheny Center, Pittsburgh, PA 15212.

8. Defendant Diane Allen was formerly Plaintiff's supervisor at AHN. As referenced herein, she intentionally discriminated against Plaintiff and created a hostile work environment.

## FACTUAL BACKGROUND

9. AHN hired Plaintiff in or around January 30, 2017 as a Care Connect Elite Supervisor. He was promised that he would become an Operations Manager within 60-90 days.

10. AHN expressed that they wanted Plaintiff to acclimate to the Care Connect culture before he received this promotion.

11. AHN also promised Plaintiff an 8:00 a.m. to 4:30 p.m. work schedule and complete training and onboarding. This never happened. AHN pulled Plaintiff out of training during his first week and told him that he needed to get to work immediately. He was then put

on a 11:00 a.m. to 8:00 p.m. shift, which was not what AHN promised. AHN, however, gave a white woman, Kim Stoyanoff, Plaintiff's promised shift.

12.     Plaintiff asked his superior and Vice President, Diane Allen, about this disparate treatment. Plaintiff's supervisor, however, responded that if Plaintiff did not like it, he could leave. This set the tone of Plaintiff's employment that would continue until his termination.

13.     Ms. Allen would continue to discriminate against Plaintiff. In or around March 2017 to December 2017, Ms. Allen would constantly ask John Guthrie, another of Plaintiff's superiors, about Plaintiff's whereabouts, stating that he never came to work. Yet Plaintiff religiously came to work on time.

14.     Further, in or around March 2017, Ms. Allen made the first racist remark that Plaintiff witnessed. She picked up a picture of an employee's picture of her husband – who happened to be black – and said "look at this garbage, I thought she was a nice girl." Plaintiff asked Ms. Allen what she was referring to and replied: "You see this? He's going to bring her down." Another agent, Rhonda Ali, witnessed this shocking behavior.

15.     On another occasion, Plaintiff asked if there had been any movement with respect to posting for the role of Operations Manager. In typical fashion, Ms. Allen responded that "what [Plaintiff] needs to focus on is getting those 'monkeys in line.'" She went on to state that this "is not my circus, not my monkeys; they're your monkeys."

16.     Plaintiff responded by stating that "no one is a monkey."

17.     Further, Ms. Allen went on to attempt to involve Plaintiff in her discrimination. Ms. Allen, in referring to a black employee, asked Plaintiff how was his "boy." Calling a black person "boy" is derogatory. This verbiage was used during slavery and Jim Crow to suggest that

black people are like children who are uncapable of thinking and taking care of themselves. And that, without their masters, they would not survive.

18. Ms. Allen mastered the art of levying racial slurs. Mr. Guthrie confided in Plaintiff that she often used them. He informed Plaintiff that Ms. Allen called the Steelers running back, Le'Veon Bell, a n*gger because he did not report to the Steelers' training camp in 2018.

19. On another trip with Mr. Guthrie, Ms. Allen sang the lyrics to the song "Gold Digger." Famously, the rapper Kanye West rhymes gold digger with a racial epithet that is used in the black community to reclaim the word and take power away from the white slave owners that inhumanely used that word to describe black people. It is a vestige of American slavery. Rather than skip over the word like most caucasion people, Ms. Allen proceeded to emphasize the work with a hard "er."

20. Ms. Allen would also ridicule Plaintiff for shopping at K-mart and Walmart. She said that shopping at these places is "ghetto."

21. During Plaintiff's time at AHN, he was the only manager given performance goals. No other manager had metrics to rate their performance. Mr. Guthrie confronted Ms. Allen about this practice. Then, Ms. Allen foisted metrics upon him too.

22. In or around April 2018, Ms. Allen selected almost all of the black employees to lay off. Mr. Guthrie, again, spoke up and said this is not right that all the folks being laid off are black. He also questioned why Ms. Allen had Plaintiff escort the black employees out of the building. saying "the optics look terrible."

23. In or around October 2018, Ms. Allen granted Plaintiff PTO. Prior to this, Ms. Allen denied each and every request for PTO. Ms. Allen would often note that the only person

that could take time off is her.  For Plaintiff to receive this time off, Mr. Guthrie had to take a stand and complain.

24. In or around October 2018, Ms. Allen told Mr. Albert that she would tie him up by his balls and hang him if he could not get a certain vendor on board with the company. She would habitually use this phrase with Plaintiff.

25. In or around December 2018, Ms. Allen gave two white employees, John Guthrie and Janet Constitine, upon information and belief, an end-of-year bonus.  She did not, however, give Plaintiff a bonus.  In fact, he never received a bonus during the entire time that he worked at AHN.

26. In 2019, Ms. Allen forced Plaintiff to attend 6:00 a.m. meetings at the hospital with the orthopedic group.  Oftentimes, he was the only one required, out of his group of peers, to attend this meeting.  Plaintiff was never given any formal clinical training.  This assignment was meant to punish Plaintiff and provide potential pretext for his termination.  If he failed, Ms. Allen would have terminated him.  Further, he was forced to wake up at the crack of dawn to attend these mandatory sessions while similarly-situated white workers did not have to.

27. In the winter of 2019, Ms. Allen ridiculed Plaintiff in a meeting for being late.  There had been a substantial snowstorm that began the night before or the early hours of the morning. Thus, the majority of the department came in late that day.  Ms. Allen did not ridicule any other team member for being late.  To the contrary, these late arrivals were completely excused because of the storm.

28. Around this time, Ms. Allen called Lisa Sowards, a Project Manage, a fat pig.  Plaintiff neither laughed at this insult nor took part in this behavior.  Ms. Allen construed this body-shaming insult as a joke.  After it became apparent that Plaintiff would not participate in

what Ms. Allen contended was a joke, Ms. Allen told him that he needed to get with the program or he would be out.

29.     Ms. Allen would also curse Plaintiff out for assisting a recruiting director, Katie Poshel, with hiring.  Plaintiff was told by another employee that she knew this would happen to him.   But he should not get in the way because it will blow over.  And that he should make sure to get with the program.

30.     In addition to Ms. Allen, Janet Constintine, also displayed discriminatory behavior. She would often refuse to drive white employees to the hospital.  Further, she would watch Plaintiff from the company's parking lot for one hour each evening.  Plaintiff brought this concern to Mr. Guthrie who stated that, "I do not know what you said, but she is not a fan, and I do not know why." Ms. Allen also participated in this practice.

31.     In or around 2019, Ms. Allen directed Jeff Fielder to create a survey where all the employees, including leadership, would need to rate Plaintiff's performance.  This survey specifically targeted Plaintiff. Plaintiff's peers expressed to him that this survey made them uncomfortable.

32.     Some of his supervisors told him that they would make sure to give him positive reviews to combat this obviously prejudicial survey.  The data, however, did not bear this out.  It showed that Plaintiff had received all negative reviews.  Plaintiff asked Ms. Allen whether he had received any positive reviews.  Ms. Allen said that he had not.

33.     Mr. Guthrie asked Mr. Fielder to search the data.  He admitted that the results from the survey were tainted.

34. In or around March 2019, Plaintiff and Mr. Guthrie formally complained that Ms. Allen engaged in discriminatory behavior. AHN eventually terminated both Mr. Guthrie and Plaintiff.

35. Around this time, Ms. Allen also commented that a soda bottle had more brains than Plaintiff.

36. In or around April 2019, Ms. Allen, in front of Plaintiff, said that Senior Operations manager Waleed Almugahid, was a sand n*gger. Mr. Almuahid is of Middle Eastern descent. This term is degrading for both black people and brown people. First, it insinuates that black people are the lowest of the low. That is, by mere comparison to them, you are levying an insult. It is also obviously a racist remark against people of Middle Eastern descent.

37. In or around April 2019, Ms. Allen then went on to comment that he and another employee, Tarran Prince, are good blacks, not n*ggrs. This statement is appalling. Expounding on it is unnecessary.

38. In or around May 2019, Ms. Allen commented that one of her managers had nappy hair and asked why she could not just comb through it.

39. In or around May 2019, Plaintiff and Mr. Guthrie made another complaint after learning of Ms. Allen's latest racial remarks.

40. Only after two complaints were made did a third-party investigator question AHN employees and request written statements. Plaintiff had to work with Ms. Allen for over two months after making his first complaint and for years while she made racial remarks that other AHN employees and supervisors heard.

41. The environment that Plaintiff had to endure was severe and pervasive. And Ms. Allen's conduct would alter any reasonable black man's work environment.

42. On or around May 30, 2019, AHN terminated Ms. Allen due to creating a hostile work environment and her use of racial slurs at work.

43. In November 2019, AHN hired Melissa Turner to replace Diane Allen.

44. In or around March 2020, Jessie Pfalzgraf informed Plaintiff that she received an anonymous complaint about Melissa Turner making racist remarks. She often displayed hostile behavior with respect to Plaintiff.



45. In or around February 2020, Melissa Turner placed Plaintiff on a performance improvement plan. Ms. Turner told Plaintiff that he does not care if anyone else underperforms, she expects perfection from Plaintiff.

46. In or around March 2020, Plaintiff's new supervisor, Melissa Turner, made a comment during a phone call that Plaintiff was a diversity hire.

47. On or about March 29, 2020, Ms. Turner cancelled all meetings between Mr. Albert and Ms. Turner.

48. Around this time, Brianne Parazino told Plaintiff that she overheard a conversation in which Ms. Turner made disparaging remarks regarding Plaintiff. Further, another coworker shared that during a conversation between her and Melissa, Melissa made disparaging comments about Plaintiff. Ms. Turner said that us girls have to stick together.

49. Human resources closed the investigation into Ms. Turner without taking any corrective action or divulging the details of the investigation with Plaintiff. As such, he was being disciplined by the same supervisor who AHN investigated. He was given no reassurances that the investigation was fair or that his adverse employment action was justified.



50. In or around April 2020, AHN terminated Plaintiff.

51. The first purportedly legitimate business that AHN provided was that the company was downsizing. Upon information and belief, other employees that were terminated due to downsizing received severance packages and/or two-months advanced notice of the lay off. Plaintiff, however, did not.

52. Plaintiff was told that he was not rehireable as a candidate for AHN. Upon information and belief, however, Ms. Allen remains a rehireable candidate for AHN.

53. Based on the discrimination that Plaintiff faced, he has sufferend from insomnia and anxiety.

## COUNT I
### Section 1981
*Race Discrimination, Hostile Work Environment, and Retaliation*
(AHN and Diane Allen)

54. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

55. Defendants' discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under 42 U.S.C. § 1981; as such, its remedies are implicated.

56. Plaintiff had the right to make and enforce contracts, to sue, and to receive the full and equal benefit of all laws.

57. Plaintiff was an at will employee, which implicates his right to make and enforce contracts.

58. Defendants abridged Plaintiff's right to make and enforce contracts by its discriminatory conduct toward Plaintiff.

59. As a result of Defendants' actions, Defendants have denied Plaintiff the right to the same terms, conditions, privileges and benefits of his employment with Defendants.

60. AHN, by and through its supervisors, intentionally discriminated against Plaintiff on the basis of race.

61. Plaintiff was a member of a protected class and was qualified for the position that Plaintiff held.

62. Defendants' actions altered Plaintiff's work environment.

63. The discrimination that Plaintiff faced detrimentally affected Plaintiff. And this discrimination would detrimentally affect a reasoanble pereson in like circumstances.

64. This severe and pervasive environment continued throughout Plaintiff's employment.

65. Defendants are liable for their supervisors under respondeat superior.

66. Plaintiff participated in protected conduct. AHN retaliated against Plaintiff because of his participation in protected activities. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

67. As a direct and proximate result of Defendants' acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

68. The wrongful acts and conduct of Defendants was done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

69. Plaintiff suffered adverse employment consequences, specifically, AHN retaliated against Plaintiff.

70. Plaintiff was terminated as a result of Defendants' discriminatory conduct.

71. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Race Discrimination; Retaliation; Hostile Work Environment)**
*(AHN)*

72. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

73. AHN's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under Title VII.

74. AHN is a covered employer under Title VII and employees more than 15 employees.

75. As a result of AHN's actions, AHN has denied Plaintiff the right to the same terms, conditions, privileges and benefits of Plaintiff's employment with AHN.

76. AHN, by and through its supervisors, intentionally discriminated against Plaintiff on the basis of race.

77. Plaintiff was a member of a protected class and was qualified for the position that Plaintiff held.

78. AHN's actions altered Plaintiff's work environment.

79. The discrimination that Plaintiff faced detrimentally affected Plaintiff. And this discrimination would detrimentally affect a reasoanble pereson in like circumstances.

80. This severe and pervasive environment continued throughout Plaintiff's employment.

81. AHN is liable for their supervisors under respondeat superior.

82. Plaintiff participated in protected conduct. AHN retaliated against Plaintiff because of his participation in protected activities. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

83. As a direct and proximate result of AHN's acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

84. The wrongful acts and conduct of AHN were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

85. Plaintiff suffered adverse employment consequences, specifically, AHN retaliated against Plaintiff.

86. Plaintiff was terminated as a result of AHN's discriminatory conduct.

87. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of AHN's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

## PRAYER FOR RELIEF

### RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a) Declaring the acts and practices complained of herein to be in violation of Section 1981 and Title VII;

b) Enjoining and permanently retraining the violations alleged herein;

c) Entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

d) Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

e) Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

f) Awarding punitive damages to Plaintiff;

g) Awarding Plaintiff such other damages as are appropriate under Title VII and Section 1981;

h) Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

i) Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Dated: November 9, 2021

*/s/ Andrew Lacy, Jr.*
Andrew Lacy, Jr. Esq.
**THE LACY EMPLOYMENT LAW FIRM LLC**
2514 W Seybert Street
Philadelphia, PA
(t) 412-301-3908
andrew.lacy@employment-labor-law.com

*Counsel for Plaintiff*